## NIAGARA FIRE INS. CO. v. McCORD.

Circuit Court of Appeals, Seventh Circuit.
March 1, 1928.

No. 3932.

1. Insurance ⊜668(15)—Evidence did not raise issue for jury whether insured told insurer's agent he had mortgaged property, and insured relied on agent's promise to make indorsement.

In action on fire insurance policy, evidence did not raise issue for jury as to whether insured told insurer's agent that he had placed mortgage on property, and insured relied on agent's promise to make indorsement on policy.

2. Insurance ⊜646(5)—In action on fire insurance policy, plaintiff had burden of proving that insurer's agent had possession of policy when mortgage was placed as claimed.

In action on fire insurance policy, in which plaintiff claimed that insurer's agent was given policy before, and did not return it until after, mortgage was placed on property, burden was on plaintiff to prove that agent had possession of policy when mortgage was placed.

3. Insurance ⊜668(15)—Evidence did not raise issue for jury on whether insurer's agent waived provision of fire insurance policy requiring written consent to mortgage.

In action on fire insurance policy, evidence did not raise issue for jury as to whether insurer's agent, who took plaintiff's application, waived provision of policy requiring written consent on policy, where insured property becomes mortgaged.

4. Insurance ⊜668(15)—Evidence did not raise issue for jury whether fire insurer waived provision requiring consent to mortgage, because not tendering premium sooner.

In action on fire insurance policy, evidence showing that insurer tendered repayment of premium within reasonable time after it knew that insured had placed mortgage on insured property without written consent of insurer, indorsed on policy, did not raise issue for jury as to whether insurer, waived provision requiring written consent because of failure to tender premium sooner.

5. Insurance ⊜330(1)—Insured placing mortgage on property without indorsement on fire insurance policy, did so at his peril.

Where insured knew it was necessary to have insurer's consent to mortgage on insured property, and left policy with agent for that

purpose, and knew that policy was to be sent to company for purpose of getting it, if insured, either before or after receiving policy back from insurer's agent, without indorsement, placed mortgage on property, he must be held to have done so at his peril.

6. Costs ⚖️=238(1)—Plaintiff in error held not entitled to costs, where unreasonably prodigal and prolix in making record, though judgment was reversed.

Plaintiff in error *held* not entitled to costs in Circuit Court of Appeals, where it was unreasonably prodigal and prolix in making its record and in its briefs, though judgment was reversed.

In Error to the District Court of the United States for the District of Indiana.

Action by John A. McCord against the Niagara Fire Insurance Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Burke G. Slaymaker, of Indianapolis, Ind., for plaintiff in error.

Harry G. Neff, of Anderson, Ind., for defendant in error.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. Reversal is asked of the judgment against defendant, plaintiff in error, for the amount of a fire loss under its policy, issued to plaintiff, defendant in error.

The policy provided, among other things: "If the property * * * shall hereafter become mortgaged * * * without written consent hereon, * * * this policy shall be null and void." And also: "No one shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement added hereto, nor shall any such provision or condition be held to be waived, unless such waiver shall be in writing added hereto."

All the facts, except those testified to by plaintiff and his son, are stipulated. The policy, the fire on September 11, 1924, and the loss adjustment of $4,002.50, are admitted, as is the placing of the mortgage on February 11, 1923, so that plaintiff's reply raises the only issue. It avers that plaintiff told the agent of defendant that he *had made* a mortgage, and requested the defendant, through its agent, to indorse upon said policy (a) a permit to execute said mortgage, and (b) a loss clause; that the defendant, through said agent, expressly agreed that it would place upon the policy the written consent requested; that defendant then

had possession of said policy; that plaintiff relied upon that agreement and believed, until the fire, that it had been complied with; that after placing the mortgage, and until the fire, plaintiff paid the defendant, through its agent at Anderson, Ind., the yearly premium, and defendant, through its said agent, with full knowledge of the mortgage, received said premiums and applied them to its own use.

Plaintiff testified: That in January, before placing the mortgage in February, he went to the company's local agent at Anderson, Ind., Robert Webb, "and told him I wanted to put a mortgage on it, and asked him what about it," and says: "He [Webb] told me to bring the policy in and he would send it to the company." That two weeks before placing the mortgage he took the policy to Webb, and told him then that he was giving the mortgage to the Frankton Bank. When asked if he said anything about indorsing the loss clause on the policy, he replied: "I just told him where I was getting the money, you know. After that I placed the mortgage on the land. At that time I had possession of the policy. After I gave it to Webb, I went in there in a few days." That was followed by the question and answer: "Q. Where was the policy when you put the mortgage on the property? A. Mr. Webb had it. Mr. Webb maintains an insurance office in the city of Anderson, and during all this time was maintaining that office there."

When asked if he had any notice of any limitation on Webb's authority to act for the company, he replied: "No, sir; I didn't. I didn't know anything about it; only I know he was the agent, and that he insured me. That was about all I knew." He also said: "This policy was to run three years." Referring to the date of the mortgage, he said: "I made payment of the premiums upon the policy after that time."

The son corroborated his father only as to the giving of the policy to Webb. That is all the evidence other than the stipulated facts. The court denied defendant's motion for an instructed verdict.

[1] Clearly the allegations of the reply that plaintiff told Webb he *had* placed the mortgage on the property is disproved by the evidence. That there was an express promise by any one that there would be an indorsement on the policy is wholly unsupported. The only promise Webb made was that he would send the policy to the company. That, in itself, negatives any idea that he or any one then waived or intended then

to waive anything. As there was no agreement to make any indorsement, the allegation that plaintiff relied on such a promise is, of course, not sustained.

Whether there is any support for the averment that plaintiff believed in good faith up to the time of the fire that there had been some kind of an indorsement, and whether there is support for the averment that the company, with full knowledge of the mortgage, accepted and retained premiums, are questions that need further consideration of the facts. Conditions in policies are frequently not read by the insured, and, if read, are often confusing. Plaintiff nowhere suggests that he did not understand the conditions of his policy. If his pleaded reply amounts to anything, we must believe that he knew the conditions, and exactly what he must do to keep within their terms, if he incumbered his property. His testimony indicates that he understood an indorsement was required. When Webb told him he would send the policy to the company, he did not even suggest that Webb make the indorsement, or that Webb had any authority to do so.

[2] The argument is that Webb was given the policy before, and did not return it until after, the mortgage was put upon the property, and that that is in itself a strong presumption of waiver. That assumes that Webb had the policy when the mortgage was placed, that Webb knew when it was placed, and that his acts were the company's acts. The burden was upon plaintiff to prove who had possession of the policy when the mortgage was placed. The evidence, all out of plaintiff's mouth, is quite as strong that plaintiff had the policy, as it is that Webb had it. There is no evidence that Webb or the company, ever knew, prior to the filing of the complaint, when, if at all, the mortgage was placed.

[3] The stipulated facts show that Webb was the agent at Anderson, Ind., with authority to receive and transmit to the company's office in Chicago, Ill., for acceptance or rejection, applications for insurance, together with money or notes for the premium if given to him. Webb had no policy blanks, and wrote no contract of insurance. When applications were accepted by the manager in Chicago, he there made up and sent the signed policy to Webb, to be countersigned and delivered. For his premium, plaintiff gave to Webb, with the application, $74.74 in cash and a note, payable in four installments, of $74.72 each, on December 1, 1922, 1923, 1924, and 1925. The note was payable to the company at its Chicago office, and plaintiff paid the installment due December 1, 1923, after the mortgage was placed on the properties in the previous February.

Although the averment of the reply is that after the mortgage date he paid premiums through Webb, his testimony is: "I made payments of premiums upon the policy after that time." The stipulation is that the installments were paid to the defendant. There is no evidence that Webb had authority to, or did, collect and receipt for premiums. On no theory, under this record, can anything done by Webb be construed as a waiver.

[4] The final question is: Was there a waiver because of a failure to repay or tender the premium before it was tendered and paid into court under defendant's answer? We have carefully searched the record to find what, if anything, there is to show that defendant knew of the mortgage at a date earlier than the filing of its answer, and we find nothing.

Plaintiff's proof of loss was signed and sworn to October 2, 1924. It states, "Nothing has been done * * * to violate the conditions of this policy or render it void," and also states that the property belonged to him, "and no other person or persons had any interest therein, except as follows." No exceptions are shown. The jurat makes plaintiff say: "No material fact is withheld that the said company should be advised of." If, then, a repayment of the premium was necessary, which we do not decide, the tender was made within a reasonable time after defendant knew the mortgage was on the property.

[5] There is no evidence whether Webb sent the policy to the company or not, or, if he did, what communication the company sent back, other than the unindorsed policy. No one promised plaintiff that consent to mortgage the property would be given. Plaintiff knew that it was necessary to have that consent, and that the policy was to be sent to the company for the express purpose of getting it. There is no evidence that either Webb or the company kept the policy an unreasonable length of time, and admittedly plaintiff had it in his possession again before the fire, and must have known that there was no indorsement upon it. Under those circumstances, if plaintiff, either before or after he received the policy back, placed a mortgage upon the property, he must be held to have done so at his peril. With the unindorsed policy in his possession, he could not have believed in good faith, un-

til after the loss by fire, that the policy had been indorsed.

We are of opinion that the court should have instructed a verdict for the defendant. [6] Defendant has been so unreasonably prodigal and prolix in making its record and in its briefs that we are of opinion that it should have no costs in this court. Plaintiff as a witness was asked less than a dozen questions, and his son half as many, and if they had been connected up they would have been competent. They do not cover more than two pages of the record, and yet they are spread over 42 pages, because to each question defendant interposed an identical objection two pages long. All the testimony of both the McCords is set out in full in defendant's brief, and, apparently fearing that this court could not find a two-page long objection, repeated 16 times in a 150-page record, it is set out in full in the brief, followed by nearly two pages that tell where it may be found. The stipulated facts are quoted in full. Thirty-seven errors are assigned. All are relied on, and all are reprinted in full in the brief. There are many other things in the record and the briefs that make them unjustifiably long.

The judgment is reversed, and the cause remanded, but without costs of this court to plaintiff in error.